UNITED STATES DISTRICT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

CASE NO.:

PD MARINER, LLC., a
Delaware Corporation,

    Plaintiff,

vs.

PANTAENIUS AMERICA, LTD
d/b/a Pantaenius Yacht Insurance,
a New York Corporation, AGCS MARINE
INSURANCE COMPANY, an Illinois
Corporation, and STARSTONE NATIONAL
INSURANCE COMPANY, a Delaware
Corporation, BULLHEAD MARINE, INC.,
a Florida, Corporation,

    Defendants.
_____/

## VERIFIED COMPLAINT

COMES NOW the Plaintiff, PD MARINER, LLC., (hereinafter "PLAINTIFF") by and through his undersigned counsel, and hereby files this his Complaint against Defendants, PANTAENIUS AMERICA, LTD., d/b/a Pantaenius Yacht Insurance, AGCS MARINE INSURANCE COMPANY, STARSTONE NATIONAL INSURANCE COMPANY, and BULLHEAD MARINE, INC(hereinafter "DEFENDANTS"), and states as follows:

## JURISDICTION AND VENUE

1. This is a case of admiralty and maritime jurisdiction as hereinafter more fully appears. Jurisdiction arises under 28 U. S. C. §1333 and is an admiralty and maritime claim within the meaning of Rule 9(h), under Federal Rules of Civil Procedure and Rule F of the Supplemental Rules for Certain Admiralty and Maritime claims.

CASE NO.:
Page 2

2. At all times material to this claim, Plaintiff PD MARINER, LLC., was a Delaware LLC., and owner of the Vessel, M/Y "Bow To My Stern", and *sui juris.*

3. This action seeks damages against Defendants PANTAENIUS, AGCS and STARSTONE, for breach of insurance contract and for common law bad faith, and against Defendant BULLHEAD MARINE. INC., for breach of a marine service contract for services to a vessel..

4. This action also seeks damages against Defendant BULLHEAD MARINE. INC., for breach of a marine service contract for services to a vessel.

5. Venue of this action lies in the Southern District of Florida, as Vessel in question is berthed in South Florida within the District and acts and events giving rise to this action occurred within the Southern District of Florida.

## THE PARTIES

6. At all material times, PD MARINER, LLC., was and is *sui juris*, and at all times material hereto, was and is the owner of the vessel which is the subject of this lawsuit.

7. PANTAENIUS AMERICA, LTD., ("PANTAENIUS") at all times material, was and is a New York corporation and a citizen of the state of New York, with its principal place of business located in Harrison, New York. PANTAENIUS did and does do business throughout the United States, including the State of Florida, and is licensed to transact business in the state of Florida.

8. AGCS MARINE INSURANCE COMPANY ("AGCS") at all times material, was and is a Illinois corporation and a citizen of the state of Illinois, with its principal place of business

located in Chicago, Illinois. AGCS did and does do business throughout the United States, including the state of Florida, and is licensed to transact business in the State of Florida.

9. STARSTONE NATIONAL INSURANCE COMPANY ("STARSTONE") at all times material, was and is a Delaware corporation and a citizen of the state of Delaware, with its principal place of business located in Jersey City, New Jersey. STARSTONE did and does do business throughout the United States, including the State of Florida, and is licensed to transact business in the State of Florida.

10. Defendant BULLHEAD MARINE, INC. ("BULLHEAD"), is a Florida corporation located in Ft. Pierce, Florida, which at all times was doing business within the District as a marine service company.

### FACTUAL ALLEGATIONS - INSURANCE CLAIM

11. On or about September 16, 2017, PANTAENIUS issued a marine insurance yacht policy to Plaintiff, as a Named Insured, on the vessel M/Y "Bow To My Stern" (the "Vessel"). The subject insurance policy, Reference No. 21255564, listed, as "Issuing Insurance Companies", AGCS MARINE INSURANCE COMPANY, and STARSTONE NATIONAL INSURANCE COMPANY).

12. PANTAENIUS held itself out as the agent of, and acting and having acted on behalf of, AGCS and STARSTONE, at all relevant times, including with respect to the issuance of insurance coverage and communicating with Plaintiff on all matters material to the policy of insurance at issue and the underlying facts pertaining to Plaintiff's claim. PANTAENIUS, AGCS and STARSTONE, for all are referenced herein collectively as "Defendant Insurers." (See Exhibit A.)

13. The subject insurance policy Reference No. 21255564 provided, *inter alia*, hull and machinery coverage for a one-year period beginning September 16, 2017 and extending through September 16, 2018, and provided hull coverage for an agreed value of $435,000.

14. A copy of policy Reference No. 21255564 with declarations page is attached hereto as Exhibit A.

15. Plaintiff paid the policy premium of $6,326.25 and otherwise complied with all of his obligations under the policy.

16. On or about June 5, 2018, (within the policy period) the subject Vessel, suffered damage in Fort Pierce FL., when a cable on the davit/crane parted while lifting the Vessel's tender out of the water, causing damage to the davit, the cable, the tender, the tender's outboard engine and portions of the hull and deck of the Vessel.

17. Plaintiff timely reported the claim to the Defendant Insurers, seeking insurance coverage for damages incurred, repairs to the vessel and its machinery, and dockage during the pendency of the repairs.

18. As the Vessel was transiting up North along the Intercoastal Waterway in Florida, the Vessel suffered additional damage, when a mooring ball cable wrapped around the rudder, propeller and shaft, causing addition damage to the Vessel.

19. To date, the Defendant Insurers have made only partial payment of Plaintiff's claims; however, the Defendant Insurers deny insurance to fully cover Plaintiff for its losses. Specifically, the Insurers have failed to fully cover repairs for the damages resulting from the cable breaking and damage to the davit, crane and hull and machinery, the tender's outboard, the rudder,

CASE NO.:<br>Page 5

propeller and shaft, the cost of haul out, storage and other related costs, and have failed to fully cover the costs of dry dock during the pendency of repairs.

## **FACTUAL ALLEGATIONS - MARINE REPAIR & SERVICE CLAIM**

20. On or September of 2017, Plaintiff and Defendant BULLHEAD MARINE, INC., entered into a series of marine contracts or agreements for the Defendant BULLHEAD to perform repairs to the Plaintiff's vessel.

21. As part of the repair work, Defendant would provide services and materials to the Plaintiff, partially related to the repair and rebuild of the Vessel's davit/crane and components. (See Bullhead invoice, Exhibit B.)

22. Defendant made assurances to the Plaintiff that Defendant would use proper equipment and components related to the repairs.

23. Based on the Defendant's assurances that it would use proper equipment, parts and services, Plaintiff agreed to have the Defendant perform the work on his vessel.

24. The parties entered into an Agreement as set forth in the attached invoice marked as Exhibit B.

25. Defendant assured the Plaintiff that the work would be properly completed.

26. The invoices outlined the contracted work to repair the Vessel's davit and crane for the Plaintiff (See Exhibit B).

27. On or about June 5, 2018, the repairs failed when the Vessel's davit broke, causing damages to the Vessel, and the vessel's tender and the tender's outboard engine.

28. An inspection of the davit, its internal components, the internal wire to the

crane/davit showed that they were improperly installed, and that proper parts were not used or replaced in the davit.

29. Plaintiff notified the Defendant that it had breached the agreement with the use of non-conforming parts and/or services. Plaintiff was forced to attempt to repair the Vessel and the davit based on the improper prior work done by the Defendant, and the parts and labor that were provided did not perform as required. As a result of improper services and work, there were damages to the Plaintiff's vessel.

30. Plaintiff had paid the Defendant for those services for parts, labor and various costs.

31. Plaintiff made demand for compensation or repairs and Defendant refused to compensate the Plaintiff. As of the date of this filing, the equipment, davit/crane are still not operating properly.

## COUNT I

## BREACH OF CONTRACT OF INSURANCE - PANTAENIUS, AGCS and STARSTONE

The allegations contained in paragraphs 1 through 31 are incorporated herein by reference.

32. This is an action for breach of a contract of marine insurance.

33. Plaintiff fully performed under the terms of the contract, and gave adequate consideration in the form of the full policy premium. Plaintiff fully performed all of his obligations and responsibilities, and completed and satisfied all obligations imposed on the Plaintiff under the above-described agreement.

34. During the period of time in which coverage was in effect, Plaintiff incurred substantial loss to his covered property and made a timely claim for repairs and storage charges

under the policy for the losses connected thereto.

35. Defendants breached the contract of insurance by failing to perform their obligation under the contract, to wit, refusing to pay Plaintiff to the extent of its covered loss, and by failing to deal with its insured with the utmost good faith and fair dealing, as Florida and New York law provide.

36. Defendants' breach of the contract of insurance has caused Plaintiff to incur substantial foreseeable and consequential damages, including but not limited to post-casualty expenditures with regard to sue and labor, and has further caused Plaintiff to incur substantial attorneys' fees that Plaintiff is entitled to recoup pursuant to maritime law, common law and applicable statutes, including but not limited to §627.428, Fla. Stat. and N.Y. Ins. Law § 5106(a).

WHEREFORE, based on the foregoing, Plaintiff demands judgment against PANTAENIUS, AGCS and STARSTONE for compensatory damages, attorneys' fees, interest, costs and for such other and further relief as this Court deems just and proper.

## COUNT II

### BAD FAITH CLAIMS HANDLING - PANTAENIUS, AGCS and STARSTONE

The allegations contained in paragraphs 1 through 31 are incorporated herein by reference.

37. This is an action for bad faith claims handling.

38. Defendants owed a duty to Plaintiff to provide the same degree of care and diligence in the investigation, evaluation, analysis and adjustment of the claims and damages arising from the June 5, 2018, davit incident and the subsequent rudder damage to the insured Vessel, that any reasonable insurer exercising ordinary care and prudence would have exercised.

CASE NO.:
Page 8

39. Defendants owed Plaintiff a duty of good faith and fair dealing.

40. The above duties arose from common law and statutory law, codified at Fla. Stat. § 624.155.

41. Defendants breached all of these duties to Plaintiff by failing to properly investigate, evaluate, analyze and adjust the claims, by failing to act in good faith and deal fairly with their insured, by delaying its investigation, by refusing to timely attend vessel inspections, by refusing to travel to marine repair locations, by refusing to utilize the equipment manufacturer recommendations for necessary repairs to the vessel and her equipment, and by otherwise refusing to expeditiously authorize repairs.

42. Defendants' conduct in this matter was in utter disregard for the interests of Plaintiff and in bad faith.

43. As a direct and proximate result of Defendants' breaches of their duties to treat Plaintiff with utmost good faith and expeditiously adjust the claim in order that the insured could mitigate damages, Plaintiff has been and continues to be damaged.

WHEREFORE, based on the foregoing, Plaintiff PD MARINER, LLC., demands judgment against PANTAENIUS, AGCS and STARSTONE, for compensatory damages, pre-judgment and post judgment interest, costs and attorney's fees and for such other and further relief as is appropriate under the circumstances.

**COUNT III - BREACH OF MARITIME SERVICE AGREEMENT - BULLHEAD**

Plaintiff re-affirms and re-alleges paragraphs 1 through 31 as though fully incorporated herein, and further alleges:

44. The Plaintiff and Defendant entered into a maritime service contract for the Defendant to provide good parts and labor to repair the Plaintiff's vessel as set forth in the invoices.

45. Defendant has materially breached the contract by:

    a. Failing to properly repair the Vessel's davit and crane;

    b. By not using proper parts and components;

    c. By using non-conforming or undersized parts;

    d. By making repairs and services on the davit in such a way that it was not fit for its use;

46. As a direct and proximate cause of the Defendant's breach, Plaintiff has been, and continues to be damages.

47. Plaintiff has been monetarily damages for the improper work, for non-conforming parts, for non-conforming repair work, and as a result, Plaintiff's Vessel has been damaged, as well as the tender, the tender's outboard engine and is still suffering damage.

WHEREFORE, Plaintiff demand judgment against Defendant BULLHEAD MARINE, INC., for damages, costs and such other relief this Court finds just and proper.

### COUNT IV - UCC BREACH OF WARRANTY OF WORKMANLIKE SERVICE- BULLHEAD

Plaintiff re-affirms and re-alleges paragraphs 1 through 31 as though fully incorporated herein, and further alleges:

48. Plaintiff and Defendant entered into a maritime contract for the repairs to the Plaintiff's vessel.

49. Defendant provided an implied agreement that it would perform the work in a

diligent and workmanlike manner.

50. The work that was contracted for was not done diligently or workmanlike manner.

51. The Defendant failed to use proper parts and equipment.

52. The Defendant breached the warranty of workmanlike service by:

   a. Using improper parts and components;

   b. Defendant used parts that were not adequate for the job as provided.

   c. Defendant used parts that were not able to lift the tender as agreed upon.

53. Plaintiff has suffered compensatory, consequential and incidental monetary damages for the damages and loss of the use of the Plaintiff's Vessel's equipment, loss to the tender and it's outboard engine, damage for replacing and repairing parts and labor, property damage to the Vessel and its tender.

WHEREFORE, Plaintiff demands judgement against Defendant BULLHEAD for Defendant's breach of warranty of workmanlike service and requests damages against the Defendant for its loss as well as interest, costs, and attorney's fees, and for such other relief this Court may deem just and proper.

### COUNT V - UCC BREACH OF APPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE - BULLHEAD

Plaintiff re-affirms and re-alleges paragraphs 1 through 31 as though fully incorporated herein, and further alleges:

54. Defendant sold various marine parts and provided service to the Plaintiff knowing that the Plaintiff was purchasing these parts for the repairs of the Vessel.

55. Defendant falsely represented that these parts would be adequate for the job

described, mainly being able to lift the tender.

56. Defendant sold Plaintiff various parts knowing that the Plaintiff relied on the Defendant's superior knowledge of the repairs required and that it was able to do the job as requested.

57. Defendant knew that the Plaintiff was relying on Defendant's skill and judgment in selecting the various repair parts and services to be provided to the Plaintiff based on Defendant's represented skill and advise.

58. The Plaintiff recently relied on Defendant's selection and description of the parts and the recommended work.

59. The Defendant sold the Plaintiff parts and services that were not proper for the job as described.

60. The Defendant sold the Plaintiff parts that were different than what were invoiced for and were promised to be used.

61. The Plaintiff has suffered compensatory, consequential and incidental monetary damages and loss of the use of the Plaintiff's Vessel's equipment, loss to the tender and it's outboard engine, damage for replacing and repairing parts and labor, property damage to the Vessel.

WHEREFORE, Plaintiff demands judgement against Defendant BULLHEAD for breach of warranty of fitness for a particular purpose and requests damages against the Defendant as well as interest, costs, and attorney's fees, and for such other relief this Court may deem just and proper.

## COUNT VI - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY - BULLHEAD

Plaintiff re-affirms and re-alleges paragraphs 1 through 31 as though fully incorporated herein, and further alleges:

62. Defendant BULLHEAD provided Plaintiff with an implied warranty of merchantability of parts and service for the Plaintiff's Vessel.

63. Specifically, Defendant warranted to the Plaintiff that Defendant would use proper parts for the job as described.

64. Defendant sold the Plaintiff non-conforming parts that were not proper for the job or parts that were not as described, namely sizeable wire to lift the tender.

65. Plaintiff provided notice to the Defendant of the Defendant's breach of implied warranty of merchantability.

66. The Plaintiff has suffered compensatory, consequential and incidental monetary damages for the damages and loss of the use of the Plaintiff's Vessel's equipment, loss to the tender and it's outboard engine, damage for replacing and repairing parts and labor, property damage to the Vessel.

WHEREFORE, Plaintiff demands judgement against Defendant BULLHEAD for Defendant's breach of implied warranty of merchantability, for damages against the Defendant, as well as interest, costs, and attorney's fees, and for such other relief this Court may deem just and proper.

CASE NO.:<br>
Page 13

## CERTIFICATE OF SERVICE

 IT IS HEREBY CERTIFIED that a true and correct copy of the foregoing was filed via transmission of Notice of Electronic Filing generated by CM/ECF this __9th__ day of December, 2019.

    Respectfully submitted,

    KARCHER, CANNING & KARCHER
    Attorneys for Plaintiff
    760 N.E. 7th Avenue
    Dania Beach, FL 33004
    Tel: 954/929-7800
    Fax : 954/929-7799
    E-mail: mrk@ukandk.com

    By:  /s/ *Michael R. Karcher*
      MICHAEL R. KARCHER
      FLORIDA BAR NO. 516287